IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MEGHAN GIBBONS, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>WELTMAN, WEINBERG & REIS CO., LPA,<br><br>        Defendant. | CIVIL ACTION<br>NO. 17-1851 |

## OPINION

**Slomsky, J.**                                                    **October 31, 2018**

## I.      INTRODUCTION

Plaintiff Meghan Gibbons ("Plaintiff" or "Gibbons") brings this action against Defendant Weltman, Weinberg & Reis Co., LPA ("Defendant" or "WWR") under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.  (Doc. No. 1.)   In the first and only Count of the Complaint, Plaintiff alleges that Defendant has violated Section 1692e, specifically Sections 1692e(3) and 1692e(10), of the FDCPA by using "false, deceptive, and misleading representations" in its debt-collection letters, which are sent to consumers on law firm letterhead. (Id.)  More specifically, Plaintiff alleges that the letter implies that it was sent by an attorney when none had reviewed her personal account.  (Id.)

Before the Court are the parties' cross-motions for summary judgment.  Plaintiff has filed a Motion for Partial Summary Judgment on the issue of FDCPA liability.  (Doc. No. 50.) Defendant has filed a Response in Opposition (Doc. No. 57) and Plaintiff has filed a Reply. (Doc. No. 63.)  Defendant has also filed a Motion for Summary Judgment, contending that its collection letters are not false or misleading under the FDCPA since Defendant is a law firm and

its attorneys are actively involved in all aspects of Defendant's debt collection activities. (Doc. No. 52.) Plaintiff has filed a Response in Opposition (Doc. No. 58) and Defendant has filed a Reply (Doc. No. 64.) The Motions are now ripe for disposition.

For reasons that follow, the Court will deny both Plaintiff's Motion for Partial Summary Judgment (Doc. No. 50) and Defendant's Motion for Summary Judgment (Doc. No. 52.)

## II.    FACTUAL AND PRCOEUDRAL BACKGROUND

Defendant Weltman, Weinberg & Reis is a law firm. (Doc. No. 52-1 ¶ 1.) Although organized as a law firm, Defendant primarily operates as a debt collector, providing debt collection services across the country to its clients. (Doc. No. 58-2 ¶ 1; Doc. No. 52-3 at 18:2-14.) WWR maintains five practice groups—consumer collections, commercial collections, bankruptcy, real estate, and "local law office services." (Doc. No. 52-3 at 19:12-18.) Defendant has approximately 662 employees in its nine offices; sixty-two employees are licensed attorneys. (Id. at 18:15-18.)

In addition to its five main practice groups, Defendant also maintains a compliance audit department and compliance management system, both of which are overseen by WWR shareholder and licensed attorney Eileen Bitterman, Esquire ("Bitterman"). (Doc. No. 52-1 ¶¶ 3-4.) Under Bittman's supervision, WWR's attorneys create and maintain policies to ensure Defendant complies with various laws, including the FDCPA. (Id. at ¶ 7.) To that end, Defendant has created a "Communicating with Consumers by Mail Policy" that governs the collection letters it sends to consumers. (Id. ¶¶ 5-6; Doc. 52-3 at 34:9-11.) This policy specifically states that "[a]ll letters to be mailed to consumers by the firm are prepared utilizing templates that have been reviewed and approved by WWR's compliance audit department." (Doc. 52-3 at 35:10-16.)

Defendant's attorneys are involved in several aspects of WWR's collection activities beyond just consumer communications.  (Doc. No. 52-1 at ¶¶ 7-12.)  Defendant's attorneys are also responsible for, inter alia, drafting policies that govern each department within WWR, reviewing new client engagement and portfolio intakes, and developing Defendant's policies and procedures for conducting "scrubs" of individual accounts before they go through collections.[1] (Doc. No. 52-1 at ¶¶ 7-12.)  But while Defendant's attorneys are involved with WWR's collection process at a high level, they do not personally conduct account-level reviews.  (Doc. No. 58-2 at ¶ 12; Doc. No. 58, Ex. C at 105:12-24.)

On April 1, 2017, Defendant sent Plaintiff a debt-collection letter.  (Doc. No. 52-1 ¶ 13; Doc. No. 52-4.)  The letter was prepared in the ordinary course of business and was sent on Defendant's firm letterhead, which states "WELTMAN, WEINBERG & REIS Co., LPA" in bold at the top and, in smaller font underneath, "ATTORNEYS AT LAW."  (Doc. No. 52-4.)  The body of the letter provides as follows:

> Dear MEGHAN GIBBONS:
>
> Please be advised that the above referenced account has been placed with us to collect the outstanding balance due and owing on this account to the current creditor referenced above.  As of the date of this letter you owe the amount listed above.  Therefore, it is important that you contact us at 1-800-570-3931 to discuss an appropriate resolution of this matter.  Additionally, you may be able to pay on your account online via our web pay website at www.wwrepay.com.
>
> This communication is from a debt collector attempting to collect this debt for the current creditor and any information obtained will be used for that purpose. Unless you dispute the validity of this debt, or any portion thereof, within thirty (30) days after receipt of this letter, we will assume that the debt is valid.  If you notify us in writing within the thirty (30) day period that the debt, or any portion

---

[1] Defendant alleges that after they acquire an account, but before that account goes to the "collection floor," it goes through a series of "scrubs" to ensure that the collection process will comply with all applicable laws.  (Doc. No. 52-3 at 48:8-49:17.)  For example, Defendant will do a telephone/cell phone scrub on an account to ensure that collecting on that account complies with the Telephone Consumer Protection Act.  (Id.)

thereof, is disputed, we will obtain verification of the debt or a copy of a
judgment and a copy of such verification or judgment will be mailed to you.  If
you request in writing within the thirty (30) day period, we will provide you with
the name and address of the original creditor if different from the current creditor.

Thank you for your attention to this matter.

Sincerely,
Weltman, Weinberg & Reis Co., L.P.A.

(Id.)  Defendant's letter to Plaintiff was prepared using a template that had been previously

reviewed and approved by its compliance audit department in accordance with the department's

consumer communications policy.  (Doc. No. 52-3 at 35:10-36:5; Doc. No. 58-2 ¶ 20.)

On April 24, 2017, Plaintiff filed this action alleging that Defendant's collection letter

made false, deceptive and misleading representations in violation of the FDCPA because it

implied that the letter was sent by an attorney.  (Doc. No. 1.)  Plaintiff also filed this action on

behalf of a proposed class of consumers who had received similar collection letters from

Defendant at addresses within the geographic region of the Third Circuit Court of Appeals.[2]  (Id.)

On August 30, 2018, following several months of fact discovery, both parties filed the Motions

for Summary Judgment.  (Doc. Nos. 50, 52.)

## III.    STANDARD OF REVIEW

Granting summary judgment is an extraordinary remedy.   Summary judgment is

appropriate "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In reaching this

decision, the court must determine whether "the pleadings, depositions, answers to

interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that

the moving party is entitled to judgment as a matter of law."  Favata v. Seidel, 511 F. App'x 155,

---

[2]       The Court granted Plaintiff's Motion for Class Certification (Doc. No. 37) by Opinion
and Order dated the same date as this Opinion.

158 (3d Cir. 2013) (quoting <u>Azur v. Chase Bank, USA, Nat'l Ass'n</u>, 601 F.3d 212, 216 (3d Cir. 2010)).  A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.  <u>Kaucher v. Cty. of Bucks</u>, 455 F.3d 418, 423 (3d Cir. 2006) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).  For a fact to be considered "material," it "must have the potential to alter the outcome of the case." <u>Favata</u>, 511 F. App'x at 158.  Once the proponent of summary judgment "points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." <u>Id.</u> (quoting <u>Azur</u>, 601 F.3d at 216).

In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Id.</u> (alteration in original) (quoting <u>Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.</u>, 587 F.3d 176, 181 (3d Cir. 2009)).  The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried.  <u>Anderson</u>, 477 U.S. at 247-49.  Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the court must credit the nonmoving party's evidence over that presented by the moving party.  <u>Id.</u> at 255.  If there is no factual issue, and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party.  <u>Id.</u> at 250.

Here, the parties filed cross-motions for summary judgment.  "The same standards and burdens apply on cross-motions for summary judgment." <u>Allah v. Ricci</u>, 532 F. App'x 48, 50 (3d Cir. 2013).  When the Court is confronted with cross-motions for summary judgment:

> [T]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance

with the summary judgment standard. If review of [the] cross-motions reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts.

Hussein v. UPMC Mercy Hosp., No. 2:09-cv-00547, 2011 WL 13751, at *2 (W.D. Pa. Jan. 4, 2011), aff'd, 446 F. App'x 108 (3d Cir. 2012) (second alteration in original) (internal quotation marks and citations omitted).

## IV.     ANALYSIS

As noted, Plaintiff brings a claim on behalf of herself, and others similarly situated, against Defendant for false, deceptive, and misleading representations in its debt-collection communication in violation of Section 1692e of the FDCPA. Plaintiff contends that she is entitled to partial summary judgment on the issue of FDCPA liability because Defendant signed and sent to her a collection letter on law firm letterhead even though no attorney was personally involved in reviewing the details of her account. (Doc. No. 50-2 at 1.) Plaintiff asserts that Defendant's letter is generally false, misleading, and deceptive in violation of Section 1692e(10) and, further, that the letter runs afoul of Section 1692e(3), which prohibits the "false representation or implication . . . that any communication is from an attorney." 15 U.S.C. § 1692e(3); (Doc No. 50-2 at 4-5).

On the other hand, Defendant argues that it is entitled to summary judgment because the debt-collection letter clearly implies that Defendant is a law firm. (Doc. No. 52 at 1; Doc. No. 57 at 2.) Defendant contends that its collection letter accurately notes that it is a law firm. (Id.) Defendant further argues that, even if the letter were to give rise to the inference that attorneys were involved in Plaintiff's debt collection process, such an inference would not be false or misleading because Defendant's attorneys are actively "involved in every facet of Defendant's collection activities." (Doc. No. 57 at 2; Doc. No. 52 at 2.) For these reasons, Defendant contends that the letter does not violate the FDCPA.

6

The issues pertinent to the parties' cross-motions for summary judgment therefore are (1) whether Defendant's debt-collection letter raises false or misleading inferences in violation of Section 1692e, and (2) whether Defendant's attorneys had meaningful involvement in Plaintiff's (and other consumers') debt collection process. In regard to both issues, there are genuine issues of material fact that cannot be determined on summary judgment. Thus, for the reasons set forth more fully below, both Plaintiff's Motion for Partial Summary Judgment and Defendant's Motion for Summary Judgment will be denied.

### A. There Is A Genuine Issue As To Whether Defendant's Debt-Collection Letter Implies Attorney Involvement In The Debt Collection Process

Section 1692e of the FDCPA generally forbids a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e sets forth a non-exhaustive list of several specific debt collection practices that fall under this general prohibition. Id. These practices include a prohibition against "(3) The false representation or implication that . . . any communication is from an attorney" and "(10) The false representation or deceptive means to collect or attempt to collect any debt . . . ." 15 U.S.C. §§ 1692e(3), e(10).

Although the list is not exhaustive, Section 1692e clearly seeks to curb material misrepresentations from being made in connection with the collection of a debt. Benner v. Bank of America, N.A., 917 F. Supp. 2d 338, 361-62 (E.D. Pa. 2013). FDCPA communications are analyzed from the perspective of the "least sophisticated debtor" to ensure that all consumers are protected. Brown v. Card Serv. Ctr., 464 F.3d 450, 453-54 (3d Cir. 2006); Jensen v. Pressler & Pressler, 791 F.3d 413, 421 (3d Cir. 2015). While the "least sophisticated debtor" is a low standard, liability will not attach to "bizarre or idiosyncratic interpretations of collection notices." Wilson v. Quadramed Corp., 225 F.3d 350, 354-55 (3d Cir. 2000).

The Third Circuit has found that the use of a law firm's letterhead on a debt collection letter can be sufficient to give the recipient the false impression that the letter is from an attorney in violation of Section 1692e(3).  Lesher v. Law Offices of Mitchell N. Kay, P.C., 650 F.3d 993, 999 (3d Cir. 2011) (citing Clomon v. Jackson, 988 F.2d 1314, 1320 (2d Cir. 1993)).  Collection letters sent on a law firm letterhead can comply with Section 1692e if (1) an attorney has been genuinely or meaningfully involved in the review of the debtor's underlying account prior to the letter being sent, Bock v. Pressler & Pressler, LLP, 30 F. Supp. 3d 283, 296 (D.N.J. 2014), or (2) "the letter contains a satisfactory disclaimer on the front of the document" noting that the communication is from a debt collector acting only in a debt collection capacity.  Daniels v. Solomon & Solomon, P.C., No. 17-0757, 2017 WL 3675400, at *4 (E.D. Pa. Aug. 25, 2017), aff'd, 2018 WL 4354403 (3d Cir. Sept. 12, 2018).

Plaintiff relies heavily on the Third Circuit's decision in Lesher to support her argument that Defendant's letter violates the FDCPA.  In Lesher, the plaintiff received a collection letter from defendant, The Kay Law Firm, which, though organized as a law firm, acted as a debt collector.  Id. at 994.  Plaintiff filed suit, alleging that the Kay Law Firm had violated Section 1692e of the FDCPA by making it appear as though an attorney had reviewed his account when, in fact, no such review had occurred.  Id. at 997.  The Third Circuit agreed, holding in relevant part:

> [T]he Kay Law Firm's letters violate section 1692e's general prohibition against "false, deceptive, or misleading" communications because they falsely imply that an attorney, acting as an attorney, is involved in collecting Lesher's debt.  In our view, the least sophisticated debtor, upon receiving these letters, may reasonably believe that an attorney has reviewed his file and has determined that he is a candidate for legal action.  We do not believe that such a reading would be "bizarre or idiosyncratic."

Id. at 1003 (internal citation omitted).

Here, Plaintiff argues that she is entitled to summary judgment on the issue of FDCPA liability because Defendant's letter violates Section 1692e by virtue of it being sent on Defendant's letterhead and signed by the firm. (Doc. No. 50-2.) Plaintiff argues that Defendant's letterhead falsely implies that its attorneys were "meaningfully involved in reviewing, analyzing, and making professional judgments about the underlying account." (Doc. No. 58 at 4.) Defendant argues, however, that its letter does not violate Section 1692e because the only truthful inference raised by the letterhead is that it was, in fact, sent by a law firm. (Doc. No. 52; Doc. No. 57.)

Lesher makes clear that, in certain circumstances, the use of a law firm's letterhead can still be false and misleading in violation of Section 1692e even if the sender is a law firm. Lesher, 650 F.3d at 1003. In Lesher, because the Kay Law Firm was acting in its debt collection capacity when it sent the collection letter to the plaintiff, the Third Circuit held that:

> "[A]n unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up." For this reason, we believe that it was misleading and deceptive for the Kay Law Firm to raise the specter of potential legal action by using its law firm title to collect a debt when the firm was not acting in its legal capacity when it sent the letters.

Id. (quoting Avila v. Rubin, 84 F.3d 222, 229 (7th Cir. 1996)). Consequently, because Defendant sent Plaintiff a collection letter while acting in its debt collector capacity, the fact that its letterhead "truthfully implies" that it is a law firm does not immunize it from FDCPA liability. (Doc. No. 57 at 5-10; Doc. No. 57-3.)

Defendant nevertheless contends that use of its letterhead "implies simply that Defendant is a law firm" and is not otherwise false or misleading. (Doc. No. 52 at 6-9; Doc. No. 57 at 10.) In support of its position, Defendant relies on the Supreme Court's decision in Sheriff v. Gillie, 136 S. Ct. 1594, 194 L.Ed.2d 625 (2016). (Doc. No. 52 at 8.) In Sheriff, the Ohio Attorney

General retained "special counsel" to act on its behalf in collecting debts owed to the State. Id. at 1597. The Attorney General required that all collection letters be sent on official Attorney General letterhead, but each letter's signature block contained a line indicating that it was being sent by special counsel. Id. at 1599. The Attorney General argued that the collection notices were not false or misleading under the FDCPA because they gave the correct impression the Attorney General was directing they be sent on his behalf. Id. at 1599-1600.

The Court ruled in favor of the Attorney General, holding that the letters were not false or misleading in violation of Section 1692e because of the Attorney General's relationship with special counsel. Id. at 1598. The Court noted as follows:

> Our conclusion is bolstered by the character of the relationship between special counsel and the Attorney General. As earlier recounted, special counsel "provide legal services on behalf of the Attorney General to one or more State Clients" in furtherance of the Attorney General's responsibilities as debt collector for state-owned entities and instrumentalities. App. 143–144. In performing this function, special counsel work closely with attorneys in the Attorney General's Office. For example, Assistant Attorneys General "frequently assist Special Counsel in drafting pleadings, and sometimes join cases as co-counsel to assist Special Counsel with particularly sensitive or complex cases." Id., at 102. Special counsel and Assistant Attorneys General even stand in one another's stead, as needed, to cover proceedings in ongoing litigation. Ibid. Given special counsel's alliance with attorneys within the Attorney General's Office, a debtor's impression that a letter from special counsel is a letter from the Attorney General's Office is scarcely inaccurate.

Id. at 1600-01.

Defendant attempts to draw an analogy with Sheriff by claiming that its letter is also accurate because it did in fact come from a law firm. (Doc. No. 52 at 8-9.) Plaintiff does not dispute, however, that Defendant is a law firm or that Defendant lied about being a law firm in its letter. Plaintiff argues instead that the letter gave her and like consumers the impression that an attorney working for Defendant had personally reviewed her underlying account prior to

sending the letter. (Doc. No. 58 at 10-12.) For this reason, <u>Sheriff</u> is inapposite to this case. The facts in <u>Sheriff</u> are entirely different from the facts here.

Defendant also relies on <u>Daniels v. Solomon & Solomon, P.C.</u>, No. 17-3017, 2018 WL 4354403 (3d Cir. Sept. 12, 2018) to further support its contention that its letter is not false or misleading. In <u>Daniels</u>, the plaintiff received a collection letter on defendant Solomon & Solomon, P.C.'s letterhead. <u>Id.</u> at *1. Plaintiff alleged that the letter violated Sections 1692e(3) and e(10) of the FDCPA, the same provisions Plaintiff alleges were violated here, by falsely suggesting attorney involvement.[3] <u>Id.</u> The Third Circuit ruled in favor of defendant, holding that defendant's letter did not violate the FDCPA for the following reasons:

> [T]he letter here bears no attorney's signature. It also contains a disclaimer stating that the communication was sent by a debt collector. As the District Court observed, a debt collection letter not reviewed by an attorney but sent on law firm letterhead <u>may</u> not violate the FDCPA if the letter contains a proper disclaimer.

<u>Id.</u> at *2 (emphasis added).

Unlike the un-signed letter in <u>Daniels</u>, Defendant's letter was signed at the bottom by "Weltman, Weiberg & Reis Co., L.P.A." (Doc. No. 57-3.) While Defendant's letter contains no specific attorney's signature, the signature of the firm might suffice to imply that a particular attorney was involved in collecting Plaintiff's debt.

The issue of whether Defendant's disclaimer is sufficient to avoid FDCPA liability, however, is not as readily distinguishable from the facts of <u>Daniels</u>. In <u>Daniels</u>, the letter contained the following language:

---

[3]     Although not at issue in this case, the plaintiff in <u>Daniels</u> also alleged that defendant's collection letter violated Section 1692e(5) of the FDCPA. Section 1692e(5) prohibits a debt collector from making a "threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5).

This is an attempt to collect a debt. Any information obtained will be used for that purpose. This communication is from a debt collector. Calls are randomly monitored, and may be recorded to ensure quality service.

Id. at *1. Here, Defendant's letter states as follows:

This communication is from a debt collector attempting to collect this debt for the current creditor and any information obtained will be used for that purpose.

(Doc. No. 57-3.) Given the similarity between the two disclaimers and the fact that WWR signed the letter at the bottom, there is a genuine issue as to whether Defendant's disclaimer sufficiently negates the impression of attorney involvement that use of its letterhead and signature otherwise might imply. Accordingly, whether Defendant's letter suggests attorney involvement in violation of Section 1692e of the FDCPA, or simply and truthfully implies that Defendant is merely a law firm acting in the capacity of a debt collector, are genuine issues of material fact that the factfinder must decide.

**B. There Is A Genuine Issue As To Whether Defendant's Attorneys Were Meaningfully Involved In Plaintiff's Debt Collection Process**

Defendant argues that, even if its letter gave the impression of attorney involvement in the underlying account, it nevertheless complies with the FDCPA because its attorneys were involved in every aspect of Plaintiff's debt collection process. (Doc. No. 52 at 9-17; Doc. No. 57 at 10-14.) In support of this argument, Defendant relies on the Northern District of Ohio's decision in Consumer Fin. Prot. Bureau v. Weltman, Weinberg & Reis Co., L.P.A., No. 17-817, 2018 WL 3575882 (N.D. Ohio July 25, 2018) (the "CFPB case"), which was resolved in WWR's favor on the issue of meaningful involvement. (Doc. No. 52 at 9-14.)

In the CFPB case, a case on all fours factually with the instant one, the Consumer Financial Protection Bureau ("CFPB") sued WWR for, inter alia, "misrepresenting the level of attorney involvement in demand letters and calls to consumers" in violation of the FDCPA.

Consumer Fin. Prot. Bureau, 2018 WL 3575882, at *1.  Both parties moved for summary judgment, which the court in the Northern District of Ohio denied.  Id.  After a trial conducted before an advisory jury, the court found that Defendant's lawyers were "meaningfully and substantially involved in the debt collection process both before and after the issuance of the demand letters."  Id. at *11.  Defendant argues that this Court should follow that court's decision.  This Court is not bound, however, to follow the decision of another district and finds that there are legal and procedural reasons for not doing so in this case.

Regarding the procedural difference, the court in the Northern District of Ohio ruled in Defendant's favor on the issue of meaningful involvement only after denying the parties' summary judgment motions and conducting a full trial on the merits before an advisory jury.  Id. at *1.  Regarding the legal difference, the court in the Northern District of Ohio made its decision without the binding precedent and guiding principles set forth by the Third Circuit in Lesher, which refers to a possible obligation on the part of a debt collector to have an attorney personally review an account prior to sending a demand letter on its law firm letterhead.  Lesher, 650 F.3d at 1003.  Thus, while the CFPB case is persuasive for Defendant's position that its attorneys were meaningfully involved in Plaintiff's debt collection process, it does not, as Defendant suggests, necessarily dictate the outcome here.

Separate and apart from the CFPB case, Defendant also relies on the deposition testimony of Eileen Bitterman, Esquire to prove meaningful involvement.  (Doc. No. 52 at 13-14; Doc. No. 57 at 13-14.)  Bitterman testified in her deposition that WWR's attorneys are involved in evaluating the intake of new portfolios, determining collection strategies, creating "scrubs" to ensure compliance with various laws, and creating and reviewing the letter templates used by the firm.  (Id.)  Plaintiff argues, however, that "meaningful involvement" requires more than attorney

oversight of policies and procedures. (Doc. No. 50-2 at 6-7.) Based on <u>Lesher</u>,[4] Plaintiff

maintains that an attorney must be involved in the "analysis and review of individual accounts

prior to sending a collection letter" in order to comply with Section 1692e. (<u>Id.</u> at 7.)

The requisite extent of attorney involvement in individual accounts for FDCPA

compliance is a question that has yet to be squarely addressed by the Third Circuit. Thus, in this

case, whether Defendant or its attorneys were required to create and personally review the letter

sent to Gibbons in order to reach the level of meaningful involvement is an issue of material fact

that only the factfinder can decide at this juncture.[5]

Accordingly, the determination of meaningful involvement, as well as the question of

whether Defendant's letter gives rise to the impression of personal attorney involvement, present

genuine factual issues that are in dispute at the summary judgment stage of this case.

---

[4]     In <u>Lesher's</u> analysis of debt-collection letters sent by attorneys, the Third Circuit looked to the Second Circuit's decision in <u>Clomon v. Jackson</u>, 988 F.2d 1314 (2d Cir. 1993) and the Seventh Circuit's decision in <u>Avila v. Rubin</u>, 84 F.3d 222 (7th Cir. 1996) for guidance. Both decisions held that debt-collection letters signed by an attorney and on their letterhead violated Section 1692e(3) because the attorney was not meaningfully involved in personally reviewing and sending the letters to the consumers. <u>Lesher</u>, 650 F.3d at 999 (citing <u>Clomon</u>, 988 F.2d at 1320 and <u>Avila</u>, 84 F.3d at 225).

[5]     Defendant argues in its Motion for Summary Judgment that the meaningful involvement doctrine is an "absurd" legal fiction that is not only absent from the plain language of the FDCPA, but also does not require the degree of involvement that Plaintiff would have this Court impose. (Doc. No. 52 at 15-17.) Defendant argues that the absurdity of the meaningful involvement doctrine "is amplified when set against the realities of our legal system" in which "[n]early all law firms employ non-attorney employees who have a wide ranging degree of responsibility at their place of employment." (<u>Id.</u> at 16.) Defendant thus takes the position that "there is no such thing as a 'meaningful involvement doctrine' separate and apart from the individual obligations of the FDCPA." (<u>Id.</u> at 17.) While Defendant's point is well-taken, its argument as to whether and to what extent meaningful involvement applies in the instant matter is nonetheless a question of fact that only the factfinder can determine.

**V.     CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment (Doc. No. 50) and Defendant's Motion for Summary Judgment (Doc. No. 50) will both be denied.  An appropriate Order follows.