IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MEGHAN GIBBONS, on behalf of herself
and all others similarly situated,

             Plaintiff,

    v.

WELTMAN, WEINBERG & REIS CO.,
LPA,

             Defendant.

CIVIL ACTION
NO. 17-1851

## OPINION

**Slomsky, J.**                                                 **October 31, 2018**

## I.    INTRODUCTION

Plaintiff Meghan Gibbons ("Plaintiff" or "Gibbons") moves to certify this putative class action filed on behalf of consumers who received an initial debt-collection letter printed on law firm letterhead from Defendant Weltman, Weinberg & Reis Co., LPA ("Defendant" or "WWR"). (Doc. No. 37.) Plaintiff alleges that Defendant's letters violate Section 1692e of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., because they falsely imply that they are being sent by an attorney and/or that an attorney has reviewed the underlying accounts. (Doc. No. 37-2 at 1.)

Opposing certification, Defendant argues that Plaintiff cannot satisfy the commonality, typicality, adequacy, predominance, and superiority requirements of Federal Rule of Civil Procedure 23. (Doc. No. 41.) Defendant also contends that Plaintiff has not met the ascertainability standard for class certification because her "proposed class requires an in-depth analysis of each purported class member's individual circumstances." (Id. at 2.)

1

Because the Court finds that the requirements of Rule 23(a) and (b)(3) have been satisfied, and the proposed class is readily ascertainable based on objective criteria, Plaintiff's Motion for Class Certification (Doc. No. 37) will be granted.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

On April 1, 2017, Plaintiff received a collections letter from Defendant for a debt she allegedly owed to the Police & Fire Credit Union.  (Doc. No. 37-2 ¶¶ 2-3.)  The letter was printed on Defendant's law firm letterhead, which had in bold at the top: "**WELTMAN, WEINBERG & REIS Co., LPA**" and, in smaller font underneath, "ATTORNEYS AT LAW." (Id. ¶ 2, Ex. B-1.)  The body of the letter states:

Dear MEGHAN GIBBONS:

Please be advised that the above referenced account has been placed with us to collect the outstanding balance due and owing on this account to the current creditor referenced above.  As of the date of this letter you owe the amount listed above.  Therefore, it is important that you contact us at 1-800-570-3931 to discuss an appropriate resolution of this matter.  Additionally, you may be able to pay on your account online via our web pay website at www.wwrepay.com.

This communication is from a debt collector attempting to collect this debt for the current creditor and any information obtained will be sued for that purpose. Unless you dispute the validity of this debt, or any portion thereof, within thirty (30) days after receipt of this letter, we will assume that the debt is valid.  If you notify us in writing within the thirty (30) day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of a judgment and a copy of such verification or judgment will be mailed to you.  If you request in writing within the thirty (30) day period, we will provide you with the name and address of the original creditor if different from the current creditor.

Thank you for your attention to this matter.

Sincerely,
Weltman, Weinberg & Reis Co., L.P.A.

(Id. at Ex. B-1.)  Based on this letter, Plaintiff was under the impression that an attorney had reviewed the details of her debt.  (Id. ¶ 6.)  Plaintiff later discovered that no attorney at WWR had reviewed her account prior to the letter being sent.  (Id. ¶ 9.)  Plaintiff also discovered that it was Defendant's "practice and procedure" to send initial collection letters to consumers printed on its law firm letterhead.  (Id.)

Consequently, on April 24, 2017, Plaintiff filed a class action complaint against Defendant alleging that its initial debt-collection letters violate Section 1692e of the FDCPA. (Doc. No. 1.)  Specifically, Plaintiff alleges that Defendant's letters violate Section 1692e(3) of the FDCPA, which prohibits the "false representation or implication . . . that any communication is from an attorney," and Section 1692e(10), which generally prohibits a debt collector from using false representations or deceptive means to collect or attempt to collect a debt.  (Id. ¶¶ 40-42); 15 U.S.C. §§ 1692e(3), (10).  In the Complaint, Plaintiff brings suit on her own behalf and on behalf of a class comprised of consumers who received Defendant's initial debt-collection letter at addresses located within the geographic region of the Third Circuit Court of Appeals beginning one year prior to the filing of her complaint.  (Doc. No. 1 ¶ 33.)

The parties had several months of fact discovery on Plaintiff's class action allegations. During discovery, Plaintiff deposed Eileen Bitterman, Esquire ("Bitterman"), a licensed attorney employed at WWR in charge of overseeing the compliance audit department and compliance management system.  (Doc. No. 37-3.)  During Bitterman's deposition, she testified that Defendant generates an initial debt-collection letter using a "323 template."[1]  (Id. at 56:17-57:9.)

---

[1]     Defendant's firm consists of five practice groups—consumer collections, commercial collections, bankruptcy, real estate, and local law office services.  (Doc. No. 46-1 at 19:15-8.)  While the consumer collections unit is primarily responsible for providing front-end legal collections services, the "323 template" letter can be sent from any one of Defendant's five units.  (Id. at 20:13-18.)

All letters generated from the 323 template include the WWR letterhead and at the end a "Weltman Weinberg & Reis Co., LPA" signature. (Id.) From that template, Defendant then incorporates account specific information unique to each individual being sent the letter. (Id.)

During discovery, Defendant revealed to Plaintiff that since April 24, 2016 it had sent approximately 18,808 letters prepared from the 323 template to individuals at addresses located within the Third Circuit. (Id. at 101:22-102:4 (citing Defendant's responses to Plaintiff's interrogatories).) While not all 18,808 letters were sent from Defendant's consumer collections unit, Bitterman testified in her deposition that it would be possible for Defendant to determine which of those letters (and any 323 template letter) dealt with accounts falling within that unit's control:

> Q:     And they were letters that were sent as a result of accounts that were being collected by the consumer collections business unit, correct?
>
> A:     The designation was not based on the consumer collections unit. It was based on the 323 letter and the states that we would have sent that initial letter into for individuals that had accounts placed with our firm. So it could have been in other units, as well.
>
> Q:     You're able to identify whether a specific account is being collected by the consumer collections unit versus the commercial collections unit, correct?
>
> A:     Yes.

(Doc. 46-1 at 102:5-19.) Bitterman further testified that for each account going to collections, WWR has information about the original creditor, the name of the debtor, the address of the debtor, and the type of debt—i.e. credit cards, medical, student loans—which it then uses to populate account-specific fields in its 323 letter template. (Id. at 26:17-24, 27:9-24, 51:18-52:3.)

After the close of discovery, Plaintiff filed the instant Motion for Class Certification (Doc. No. 37.) In it, Plaintiff seeks to certify the following class:

All persons with addresses within the jurisdiction of the United States Court of Appeals who, beginning one year prior to the filing of the Complaint through and including the final resolution of this case, were sent an initial letter from Defendant attempting to collect a consumer debt which was printed on law firm letterhead.

(Id.)  On July 23, 2018, Defendant filed its response, arguing in opposition that certification would be improper since (1) Plaintiff's individual FDCPA claim is meritless,[2] (2) Plaintiff has not met the requirements of Federal Rule of Civil Procedure 23(a) or (b)(3), and (3) the proposed class is not readily ascertainable.  (Doc. No. 41.)  On August 22, 2018, Plaintiff filed a reply. (Doc. No. 46.)

## III.    STANDARD OF REVIEW

A class certification motion must comply with the requirements of Federal Rule of Civil Procedure 23.  Rule 23 states in relevant part:

> **(a) Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> **(1)** the class is so numerous that joinder of all members is impracticable;
>
> **(2)** there are questions of law or fact common to the class;
>
> **(3)** the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> **(4)** the representative parties will fairly and adequately protect the interests of the class.
>
> **(b) Types of Class Actions.** A class action may be maintained if Rule 23(a) is satisfied and if:
> . . .

---

[2]    Whether Plaintiff has demonstrated a meritorious FDCPA claim is a genuine issue of fact for the factfinder to decide.  Consequently, in an Order and Opinion filed the same date as this Opinion, the Court denied Plaintiff's Partial Motion for Summary Judgment (Doc. No. 50) and Defendant's Motion for Summary Judgment (Doc. No. 52).  Thus, only Plaintiff's Motion and Defendant's objections to class action certification will be addressed in this Opinion.

**(3)** the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Id.

In Comcast Corp. v. Behrend, 133 S. Ct. 1426 (2013), the United States Supreme Court reaffirmed the principles that must guide a district court's analysis of a class certification motion:

The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. To come within the exception, a party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23. The Rule does not set forth a mere pleading standard. Rather, a party must not only be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a). The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b).
. . . .

Repeatedly, we have emphasized that it may be necessary for the [district] court to probe behind the pleadings before coming to rest on the certification question, and that certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied. Such an analysis will frequently entail overlap with the merits of the plaintiff's underlying claim. That is so because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.

Id. at 1432 (internal citations, quotation marks, and emphasis omitted).

In sum, "every putative class action must satisfy [by a preponderance of the evidence] the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)."

Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 590 (3d Cir. 2012).

## IV.  ANALYSIS

In this case, the claim against Defendant stems from its practice of sending consumers initial debt-collection letters printed on law firm letterhead.  Plaintiff summarizes the factual basis for her claim as follows:

> WWR, a debt collector, sent debt collection letters to thousands of consumers residing in the Third Circuit on letterhead indicating that an attorney was involved in the review of the underlying account.  This was a misrepresentation in violation of the FDCPA, as no attorney actually reviewed the underlying account.

(Doc. No. 37-2 at 1.)  Based on this allegation, Plaintiff must establish that her proposed class meets the requirements set forth in Federal Rules of Civil Procedure 23(a) and (b)(3), and that the class is readily ascertainable based on objective criteria.  Each of these requirements will be discussed, in turn, below.

### A.  Federal Rule of Civil Procedure 23(a): Class Action Prerequisites

As noted earlier, Federal Rule of Civil Procedure 23(a) provides as follows:

> **(a) Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (**1**) the class is so numerous that joinder of all members is impracticable;
>
> (**2**) there are questions of law or fact common to the class;
>
> (**3**) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (**4**) the representative parties will fairly and adequately protect the interests of the class.

Id.  The four requirements of Rule 23(a) are referred to as numerosity, commonality, typicality, and adequacy of representation.  Marcus, 687 F.3d at 590-91.  These requirements will be discussed individually.

### 1. Rule 23(a)(1): Numerosity is Satisfied

"There is no minimum number of members needed for a suit to proceed as a class action. [The Third Circuit] ha[s] observed, however, that 'generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.'" Marcus, 687 F.3d at 595 (quoting Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001)).

Here, numerosity is not an issue. During the class period, Defendant does not dispute that it mailed its largely uniform debt-collection letter to thousands of individuals. (Doc. No. 37-2 at 7; Doc. No. 41 at 16-17.) Rather, Defendant argues that numerosity is not satisfied because not every one of those individuals necessarily qualifies as a "consumer" for purposes of the FDCPA. (Doc. No. 41 at 16-17.) An individual must meet the statutory definition of a "consumer" to fall within the protection of the FDCPA. See Daniels v. Solomon & Solomon P.C., No. 17-3017, 2018 WL 4354403, at *2 (E.D. Pa. Sept. 12, 2018). The FDCPA defines "consumer" to mean "any natural personal obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). The FDCPA further defines "debt" to mean "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). Consequently, the FDCPA protects only individuals who have incurred a debt for personal use, and not individuals who have incurred a debt for commercial or business-related purposes. Defendant maintains that at least some of the individuals who received its debt-collection letter were in default for incurring a commercial obligation, as opposed to an obligation arising out of a transaction for personal purposes. (Id.)

Defendant's argument, a common refrain throughout its opposition brief, does not disprove numerosity. Plaintiff has shown that 18,808 individuals received a collections letter

based on the 323 template.  (Id.)  Despite Defendant's contention that not all of those individuals are consumers, even a fraction of that number would suffice for purposes of Rule 23(a)(1). Accordingly, Plaintiff's proposed class satisfies the numerosity requirement.

### 2. Rule 23(a)(2): Commonality is Satisfied

The commonality requirement is also satisfied because there are common questions of law and fact that will generate common answers.  "Rule 23(a)(2)'s commonality requirement does not require identical claims or facts among class member[s].  For purposes of Rule 23(a)(2), even a single common question will do."  Marcus, 687 F.3d at 597 (quotation marks and citations omitted).  "[The] common contention . . . must be of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) (internal citations and quotations omitted).

In this case, there are several common legal and factual questions.  For example, and as Plaintiff submits, the "principal common question is whether the Defendant violated the FDCPA by following its established procedures, and sending thousands of consumers collection letters on law firm letterhead without meaningful attorney involvement."  (Doc. No. 37-2 at 9 (emphasis in original).)  As such, the common legal question is whether Defendant's letter is false and misleading in violation of the FDCPA.  The answer to this question will generate a common answer that will likely resolve all the class members' claims.  If Defendant's letter is found to have violated the FDCPA, Defendant will be liable.  Consequently, Plaintiff has satisfied the commonality requirement.[3]

---

[3]     Defendant contends that Plaintiff does not satisfy the commonality requirement because not all of the 18,808 individuals who received its letters are consumers like Plaintiff and therefore they do not all face the same common question.  (Doc. No. 41 at 17-18.)  As discussed in Section IV.C. infra, however, Plaintiff has established that her proposed class

### 3. Rule 23(a)(3): Typicality is Satisfied

Plaintiff's claim is typical of the class because she is pursuing the same legal theory as the class and there are few, if any, factual differences between her claim and those of the putative class members. "Unlike the numerosity and commonality requirements, which evaluate the sufficiency of the class itself, the typicality requirement assesses the sufficiency of the named plaintiff." Sanneman v. Chrysler Corp., 191 F.R.D. 441, 447 (E.D. Pa. 2000). "The concepts of typicality and commonality are closely related and often tend to merge." Marcus, 687 F.3d at 597. "Typicality, however, derives its independent legal significance from its ability to 'screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present.'" Id. at 598 (citation omitted).

To determine whether a named plaintiff's "legal or factual position" is "markedly different" from other class members, the Third Circuit has directed district courts to "consider the attributes of the plaintiff, the class as a whole, and the similarity between the plaintiff and the class," focusing on the following:

> (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory;
>
> (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and
>
> (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

---

is ascertainable. Defendant's argument that Plaintiff must distinguish among the 18,808 individuals who may have a common question at this stage does not undercut commonality.

Id. (quoting In re Schering Plough Corp. ERISA Litig., 589 F.3d 585, 599 (3d Cir. 2009)) (spacing added). "A common thread running through the various components of typicality . . . is the interest in ensuring that the class representative's interests and incentives will be generally aligned with those of the class as a whole." In re Schering, 589 F.3d at 599.

Here, Plaintiff is a typical representative of the class. Plaintiff submits that each class member, like herself, "is a victim of Defendant's improper activity and was subjected to the same or substantially similar illegal conduct." (Doc. No. 37-2 at 9.) Consequently, with respect to the first factor, Plaintiff's sole claim is the same as the class claim—i.e., that Defendant violated the FDCPA when it sent initial debt-collection letters printed on its law firm letterhead without personal review of the alleged debtor's account by an attorney. (See Doc. No. 1.) Factually, Plaintiff's claim as it relates to this legal theory is substantially similar, if not identical, to the claims of the other class members. Legally, Plaintiff and the class both need to show that Defendant's collection letters violate Section 1692e of the FDCPA.

With respect to the second factor, Defendant has not proven, nor is there any evidence to suggest, that Plaintiff is subject to unique defenses that would otherwise be inapplicable to the class as a whole. And finally, with respect to the third factor, given that Plaintiff's claim is identical to the claim of the class, her interests and incentives in pursuing this action are "sufficiently aligned" with the other class members. Accordingly, Plaintiff has satisfied the typicality requirement.[4]

---

[4] Defendant again contends that Plaintiff is not a typical representative because "there is absolutely no way to determine that any of the putative class members incurred an obligation that constitutes a consumer debt under the FDCPA." (Doc. No. 41 at 19.) In this regard, Defendant reiterates that Plaintiff cannot distinguish which of the 18,808 individuals on the receiving end of its letters incurred a consumer versus commercial debt. Defendant's point, however, attacks the ascertainability of the class and does not undermine typicality under Rule 23(a)(3).

### 4. Rule 23(a)(4): Adequacy is Satisfied

Like typicality, the adequacy requirement focuses on the class representative's relationship to the class as a whole. "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997). "The adequacy requirement has two components: (1) . . . the experience and performance of class counsel; and (2) . . . the interests and incentives of the representative plaintiffs." Dewey v. Volkswagen Aktiengesellschaft, 681 F.3d 170, 181 (3d Cir. 2012) (citation omitted).

In this case, the first component of the adequacy requirement is not at issue since there has been no challenge to the experience or performance of Plaintiff's counsel. See, e.g., In re Schering, 589 F.3d at 602 (finding no analysis necessary where "[n]o issue ha[d] been raised regarding the adequacy of [Plaintiff]'s counsel for purposes of representing the class."). As to the second component, "the linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." Dewey, 681 F.3d at 183. "There are clear similarities between the components of the typicality inquiry relating to the absence of unique defenses and alignment of interests, and this second part of the adequacy inquiry that focuses on possible conflicts of interest." In re Schering, 589 F.3d at 602.

"Certain intra-class conflicts may cause the interests of the representative plaintiffs to diverge from those of the unnamed class members. The adequacy requirement 'is designed to ferret out' such conflicts of interest." Dewey, 681 F.3d at 183-84 (citation omitted). A named plaintiff is not an adequate representative of unnamed class members where there is a "fundamental conflict" between the two, that is, a conflict of interest that is material and touches "the specific issues in controversy." Id. at 184 (citation omitted).

Here, Plaintiff is an adequate representative of the class insofar as she has no intra-class conflicts. Plaintiff's only claim in this action coincides with the class claim and she seeks only to recover statutory damages from Defendant, the same damages that class members would be entitled to. Accordingly, Plaintiff's interests and incentives are aligned with those of the class members.

Defendant insists, however, that Plaintiff is not an adequate representative due to her alleged lack of knowledge about class actions and what it means to be a class representative. (Doc. No. 41 at 20.) In making this argument, Defendant relies on Plaintiff's deposition testimony where she states that she is not aware of all the responsibilities and duties that come with serving as a class representative. (Doc. No. 41 at 20; Doc. No. 41-3 at 63:19-23.)

Plaintiff's limited knowledge does not render her an inadequate representative of the class. "A class representative need only possess 'a minimal degree of knowledge necessary to meet the adequacy standard.'" Blandina v. Midland Funding, LLC, 303 F.R.D. 245, 252 (E.D. Pa. 2014) (quoting New Directions Treatment Servs. V. City of Reading, 490 F.3d 293, 313 (3d Cir. 2007)). To that end, "[t]he adequacy of putative class representatives does not depend on their legal knowledge, nor are they required to know all the facts about the class as a whole." McCall v. Drive Fin. Servs., L.P., 236 F.R.D. 246, 253 (E.D. Pa. 2006).

Other portions of Plaintiff's deposition testimony clearly establish that she possesses knowledge of the responsibilities and duties incumbent on a class representative. For example, Plaintiff stated during her deposition that she would be responsible as class representative for, inter alia, (1) communicating with counsel, (2) testifying in court before a jury, and (3) representing people unknown to her who received a similar debt-collection letter from Defendant. (Doc. No. 46-4 at 16:5-12, 17:4-16.) Plaintiff has demonstrated satisfactory

13

knowledge of her duties and responsibilities to serve as class representative in this case and, as such, meets the adequacy requirement of Rule 23(a)(4).

**B.     Federal Rule of Civil Procedure 23(b)(3): Class Action Seeking Monetary Damages**

In addition to meeting the requirements of Rule 23(a), the action must also qualify as one of the types of class actions described in Rule 23(b).  In this case, Plaintiff has moved for certification under subsection (b)(3), which requires:

> the Court [find] that the questions of law or fact common to class members <u>predominate</u> over any questions affecting only individual members, and that a class action is <u>superior</u> to other available methods of fairly and efficiently adjudicating the controversy.

Id. (emphasis added).  "The twin requirements of Rule 23(b)(3) are known as predominance and superiority."  In re Hydrogen Peroxide, 552 F.3d 305, 310 (3d Cir. 2008).

The predominance inquiry is driven by the interests of individual class members in controlling their own litigation, whereas the superiority analysis focuses on the advantages and disadvantages of using the class action device as compared to other litigation methods.  See Fed. R. Civ. P. 23(b)(3).  Each requirement will be discussed below.

**1.     Predominance: Common Questions of Fact and Law Predominate Over Questions Affecting Individual Members of the Class**

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation, a standard far more demanding than the commonality requirement of Rule 23(a), requiring more than a common claim."  In re Hydrogen Peroxide, 552 F.3d at 310 (internal citations and quotation marks omitted).  "To assess predominance, a court at the certification stage must examine each element of a legal claim 'through the prism' of Rule 23(b)(3)."  Marcus, 687 F.3d at 600 (citation omitted).

"A plaintiff must 'demonstrate that the element[s] of [a legal claim] [are] capable of proof at trial through evidence that is common to the class rather than individual to its members.'" Id. (citation omitted). Furthermore, "a district court must formulate some predication as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." Id. (quotation marks and citation omitted). "'If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable.'" In re Hydrogen Peroxide, 552 F.3d at 311 (citation omitted).

Here, common questions of fact and law predominate over questions affecting individual class members. Plaintiff's claim is that Defendant, pursuant to its uniform consumer communications policies, in sending a debt-collection letter to thousands of individuals violated Section 1692e of the FDCPA because, by virtue of the letter being printed on law firm letterhead and signed by Defendant, it falsely implied that an attorney was personally involved in the review of the underlying accounts. (Doc. No. 1; Doc. No. 37-2 at 13.) Thus, Plaintiff's claim, and the claims of individual class members, primarily involves the same (1) legal issue, (2) legal theory, (3) facts, (4) requisite level of proof, and (5) damages.

Defendant nevertheless contends that individual questions of fact predominate because a "key issue that would arise is whether each of the members of the class received a letter related to a 'consumer' obligation under the FDCPA." (Doc. No. 41 at 22.) According to Defendant, this means that class certification is inappropriate because it would be "necessary to individually depose each putative class member regarding the underlying nature of their obligations." (Id.) The Court disagrees that this claim makes class certification inappropriate.

As discussed with respect to ascertainability infra, Plaintiff has sufficiently demonstrated at this stage of the case that based on Defendant's records and the deposition testimony of Eileen

Bitterman, Esquire, it would be possible for Defendant to identify the individuals who received its debt-collection letter as consumers under the FDCPA and those who are not consumers. (Doc. No. 46 at 6.) Bitterman's deposition testimony also establishes that Defendant would be able to isolate the letters that were sent from its consumer collections unit and, from there, further analyze whether an individual is obligated on the account, identify the original creditor, and review the nature of the underlying debt. (Id.) Thus, while Defendant contends that individual questions predominate, the evidence proves that any individual issue in this case can be resolved without needing to depose each potential class member.

Consequently, in comparing Plaintiff's claim to the claims of individual class members, it is clear that common legal and factual issues predominate for purposes of Rule 23(b)(3).

### 2. Superiority: The Class Action is the Superior Method of Litigation for this Claim

In making the superiority determination, courts consider the following factors:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D). Based on these four factors, class certification is the superior method to adjudicate this case fairly and efficiently.

First, the class members do not have a significant interest in "individually controlling the prosecution or defense of separate actions." Id. The recovery on these claims is small, individual defenses do not appear to be available, and the same legal theory will likely govern each claim. Defendant nevertheless contends that class members have an incentive to pursue individual claims because, doing so, could result in them being awarded more in damages. (Doc.

No. 41 at 23.)  Damages for this class action are calculated pursuant to 15 U.S.C. § 1692k, which

provides that debt collectors are liable:

> (A) in the case of any action by an individual, such additional damages as the
> court may allow, but not exceeding $1,000; or
>
> (B) In the case of a class action, (i) such amount for each named plaintiff as could
> be recovered under subparagraph (A), and (ii) such amount as the court may allow
> for all other class members, without regard to a minimum individual recover, not
> to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt
> collector . . . .

15 U.S.C. § 1692k(a)(2).

Based on Defendant's net worth, it contends that class members "will recover

significantly less than the statutory amount of damages provided for under 15 U.S.C. §

1692k(a)(2)(A), $1,000.00, than if they pursued individual claims."  (Doc. No. 41 at 23.)  Courts

facing this issue, however, generally hold that superiority is not destroyed unless Defendant's net

worth is negative.  See Dell v. Nat'l Recovery Agency, 291 F. Supp. 3d 687, 704 (E.D. Pa. 2018)

(collecting cases).  Defendant has made no such contention here.

Moreover, Rule 23(c) allows Rule 23(b)(3) class members to opt out of the class and

bring their own claims.  Fed. R. Civ. P. 23(c).  Thus, in the event the class members here wish to

pursue their own claims against Defendant, the class action device does not prevent them from

doing so.  Consequently, the first factor weighs in favor of superiority.

Second, there is no evidence that any class member has already initiated litigation

concerning this controversy.  Third, it is desirable to concentrate the litigation of this claim in the

Eastern District of Pennsylvania.  Not only are the claims small and unlikely to be pursued

individually absent certification, but the event that led to this litigation being filed – Plaintiff's

receipt of the letter – occurred in the Eastern District of Pennsylvania.  (Doc. No. 37-4 at 5.)

Moreover, the class is confined to addresses located within the Third Circuit. Thus, it is likely that members of the class will reside in this district.

Finally, a class action poses few, if any, difficulties with respect to management. This action raises one legal issue and involves few factual differences between claims. One of the few factual differences that might arise is whether a class member qualifies as a consumer for purposes of the FDCPA. Defendant contends that its due process rights would be at risk if even one non-consumer were allowed into the class. (Doc. No. 41 at 23.) As discussed with respect to ascertainability, infra, however, Plaintiff has proposed a method that will ensure the class remains limited to individuals who received letters regarding only consumer obligations. Consequently, the managerial challenges raised by this class action are small.

In sum, under the factors set forth in Rule 23(b)(3), the class action device is the superior method for litigating this action.

### C.     Plaintiff Has Shown That The Proposed Class Is Ascertainable

Despite Plaintiff having already identified 18,808 potential class members, Defendant argues that the class is unascertainable because "extensive and individualized fact-finding or mini-trials" are necessary. (Doc. No. 41 at 9.) Once again, Defendant contends that the 18,808 potential class members might include individuals who took loans which were not for personal use as required by the FDCPA. (Id. at 15.) Defendant further asserts that conducting 18,808 individual depositions would be the only way to ensure that such non-consumer debts are excluded from Plaintiff's class. (Id.) As such, Defendant argues that Plaintiff has not established a feasible mechanism for ascertaining class membership. For reasons below, the Court disagrees.

In addition to the requirements of Federal Rule of Civil Procedure 23(a) and (b), a plaintiff seeking certification of a Rule 23(b)(3) class must demonstrate that the class is "currently and readily ascertainable based on objective criteria." Marcus v. BMW of N. Am.,

LLC, 687 F.3d 583, 593 (3d Cir. 2012). To satisfy the ascertainability standard, the plaintiff must establish that: (1) class members can be identified using objective criteria; and (2) there is a "reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." City Select Auto Sales, Inc. v. BMW Bank of N. Am. Inc., 867 F.3d 434, 439 (quoting Byrd v. Aaron's Inc., 784 F.3d 154, 163 (3d Cir. 2015)). At bottom, the plaintiff must show how potential class members can be identified in an accurate and efficient manner. Carrera v. Bayer Corp., 727 F.3d 300, 306-07 (3d Cir. 2013).

Accordingly, the ascertainability analysis is narrow. It focuses on whether class members can be identified without the need for "extensive and individualized fact-finding." Byrd, 784 F.3d at 163. At the certification stage, the plaintiff need not identify the class members— "'ascertainability only requires the plaintiff to show that class members can be identified.'" Byrd, 784 F.3d at 164 (quoting Carrera, 727 F.3d at 308 n.2) (emphasis in original).

Here, Plaintiff has satisfied both elements of the ascertainability requirement. First, the criteria for class membership are objective. To be included in the class: (1) the member must have an address within the Third Circuit; (2) the member must have received an initial consumer debt-collection letter from Defendant at that address; and (3) the member must have received Defendant's letter on or after April 24, 2016. (Doc. No. 37-2 at 2.) There is nothing subjective about who is included in the class. Either the class member did or did not receive a letter from Defendant at an address located in the Third Circuit within the proscribed timeframe.

Second, Plaintiff's proposed method of ascertaining class members is administratively feasible and reliable. Plaintiff proposes that Defendant ascertain class members by identifying which of its letters prepared from the 323 template were sent to individuals from its consumer collections unit – the unit responsible for collecting debts from individuals as opposed to from

businesses. (Doc. No. 46 at 6.) Because Defendant's standard operating procedures define "consumer" and "debt" consistent with the definitions used in the FDCPA, Plaintiff submits that letters sent from WWR's consumer collections unit would be appropriately limited to consumer debts for purposes of ascertaining class members. (Doc. No. 46 at 6; Doc. No. 46-1 at Ex. 9.) Plaintiff's position is further supported by Bitterman's deposition testimony where she states that Defendant can readily determine which of its letters are sent from the consumer collections unit as opposed to the other units of WWR. (Doc. No. 46-1 at 102:15-19.)

To the extent the consumer collections unit criterion is too broad, Plaintiff further proposes that class members can be ascertained from Defendant reviewing its records to determine (1) whether an individual is obligated on the account, (2) the original creditor, and (3) the nature of the underlying debt. (Doc. No. 46 at 6.) Bitterman's deposition testimony establishes that Defendant would be able to undertake such a review. For instance, Bitterman testified that Defendant's "process" for generating letters from the 323 template involves populating account-specific information on each debtor such as that debtor's name, address, and creditor information. (Doc. No. 46-1 at 51:18-52:3.) Bitterman also testified that Defendant receives information regarding the type of obligation that is owed on a particular account going through collections—i.e. whether the obligation deals with a credit card debt, auto deficiency, or student loans. (Id. at 26:17-24.)

Plaintiff's proposal is in accordance with what the Third Circuit has made clear: "the size of a potential class and the need to review individual files to identify its members are not reasons to deny class certification." Byrd, 784 F.3d at 171 (internal citation omitted). And in the context of the FDCPA, several courts, including courts within this Circuit, have found that a class is ascertainable even if there exists an open question as to whether the underlying loan is

"consumer based."  See Grubb v. Green Tree Servicing, LLC, No. 13-7421, 2017 WL 3191521 (D.N.J. July 27, 2017) (collecting cases in which district courts certified class actions even where the debt collection agency did not segregate consumer and business debt counts).

Defendant argues, however, that there is no administratively feasible way to ascertain class members without doing individualized fact-finding.  (Doc. No. 41 at 15.)  Defendant takes issue with Plaintiff's proposed methodology, arguing that it hinges on Plaintiff's erroneous assumption that all letters sent from its consumer collections unit relate to obligations incurred for personal and not commercial use.  (Doc. No. 41 at 10.)  Defendant maintains that simply because letters were sent by its consumer collections unit does not mean the account being collected on qualifies under the FDCPA's definition as a "debt."[5]  (Id.)

Plaintiff's methodology, however, goes beyond merely relying on the consumer collections unit criterion for narrowing the class to consumer debts.  (Doc. No. 46 at 6.)  As noted, in reliance on Bitterman's deposition testimony and Defendant's standard operating procedures, Plaintiff submits that class members can be further and more accurately ascertained based on information contained within Defendant's records of its accounts.  (Id.)  At this stage, even though Plaintiff has not already identified all members of her proposed class, she has met her burden of demonstrating that class members can be identified.  Byrd, 784 F.3d at 164.

Consequently, because Plaintiff has demonstrated an administratively feasible and reliable method for identifying class members, Plaintiff has met her burden of proving that the proposed class is ascertainable.

---

[5]     As previously noted, the FDCPA defines "debt" to mean "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  15 U.S.C. § 1692a(5).

## V.     CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Class Certification (Doc. No. 37) will be granted.  An appropriate Order follows.