IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MEGHAN GIBBONS, on behalf of herself
and all others similarly situated,

Plaintiff,

v.

WELTMAN, WEINBERG & REIS CO.,
LPA,

Defendant.

CIVIL ACTION
NO. 17-1851

## OPINION

**Slomsky, J.**                                                    **August 25, 2020**

## I.   INTRODUCTION

Before the Court is Defendant Weltman, Weinberg & Reis Co.'s Motion to Dismiss for

Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1).[1]  (Doc. No. 89.)  Weltman,

Weinberg & Reis Co. is a law firm.  This case arises from a debt-collection letter Plaintiff Meghan

Gibbons received from the firm.  She alleges that the contents of the letter violated provisions of

the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C § 1692e(3) and §1692e(10).[2]  (Doc.

---

[1]    Federal Rule of Civil Procedure 12(b)(1) provides:

> Every defense to a claim for relief in any pleading must be asserted in the
> responsive pleading if one is required. But a party may assert the following defenses
> by motion:
>
>     (1) lack of subject-matter jurisdiction . . . .

[2]    15 U.S.C. §§ 1692e(3) and 1692e(10) state:

> A debt collector may not use any false, deceptive, or misleading representation or
> means in connection with the collection of any debt. Without limiting the general
> application of the foregoing, the following conduct is a violation of this section:

No. 1.)  She claims that the letter is misleading because it implies that a lawyer personally reviewed her debt file, when in fact this was not the case.  (Id.)  Defendant's instant Motion to Dismiss challenges the Court's subject matter jurisdiction based on its contention that Plaintiff lacks standing to sue.  For reasons set forth below, the Motion will be denied.

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On March 30, 2020, Defendant filed the instant Motion to Dismiss [for] Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1).  (Doc No. 89.)  In its Motion, Defendant states that "Plaintiff lacks Article III standing to bring her claims because she has failed to allege an injury in fact" and has not shown that the injury she claims was caused by Defendant.  (Id. at 1.)[3]

On April 13, 2020, Plaintiff filed a Response in Opposition to Defendant's Motion, arguing that the facts support her standing in this case.  (Doc. No. 91.)  Plaintiff points to deposition testimony and evidence obtained during discovery to support her allegation that Defendant's

---

(3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.

. . .

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

[3]    Under Article III, Section 2, Clause 1 of the United States Constitution,

The judicial power shall extend to all cases, in law and equity, arising under this Constitution, the laws of the United States, and treaties made, or which shall be made, under their authority;--to all cases affecting ambassadors, other public ministers and consuls;--to all cases of admiralty and maritime jurisdiction;--to controversies to which the United States shall be a party;--to controversies between two or more states;--between a state and citizens of another state;--between citizens of different states;--between citizens of the same state claiming lands under grants of different states, and between a state, or the citizens thereof, and foreign states, citizens or subjects.

attorneys were not meaningfully involved in her debt-collection account or the collection letter. (See id.)  She argues that "[d]espite the contents of the [Defendant's letter], no attorney was actually involved in any capacity in reviewing the details of [her] account, making any professional or reasoned judgment as to the status, collectability, or delinquency of the account."  (Id. at 13.) According to Plaintiff, she was misled because the letter she received from Defendant implied attorney involvement in her account and allegedly there was none.  For this reason, she claims she "suffered the exact injury that Congress sought to prevent when it enacted the FDCPA."  (Id. at 14.)

The Court has explained the background of this case in an Opinion (Doc. No. 70) filed October 31, 2018.  It is pertinent here and reproduced in relevant part below.

> Defendant Weltman, Weinberg & Reis is a law firm.  (Doc. No. 52-1 ¶ 1.)  Although organized as a law firm, Defendant primarily operates as a debt collector, providing debt collection services across the country to its clients.  (Doc. No. 58-2 ¶ 1; Doc. No. 52-3 at 18:2-14.)  WWR maintains five practice groups—consumer collections, commercial collections, bankruptcy, real estate, and "local law office services." (Doc. No. 52-3 at 19:12-18.)  Defendant has approximately 662 employees in its nine offices; sixty-two employees are licensed attorneys.  (Id. at 18:15-18.)
>
> In addition to its five main practice groups, Defendant also maintains a compliance audit department and compliance management system, both of which are overseen by WWR shareholder and licensed attorney Eileen Bitterman, Esquire ("Bitterman").  (Doc. No. 52-1 ¶¶ 3-4.)  Under Bittman's supervision, WWR's attorneys create and maintain policies to ensure Defendant complies with various laws, including the FDCPA.  (Id. at ¶ 7.)  To that end, Defendant has created a "Communicating with Consumers by Mail Policy" that governs the collection letters it sends to consumers.  (Id. ¶¶ 5-6; Doc. 52-3 at 34:9-11.)  This policy specifically states that "[a]ll letters to be mailed to consumers by the firm are prepared utilizing templates that have been reviewed and approved by WWR's compliance audit department."  (Doc. 52-3 at 35:10-16.)
>
> Defendant's attorneys are involved in several aspects of WWR's collection activities beyond just consumer communications.  (Doc. No. 52-1 at ¶¶ 7-12.) Defendant's attorneys are also responsible for, inter alia, drafting policies that govern each department within WWR, reviewing new client engagement and portfolio intakes, and developing Defendant's policies and procedures for conducting "scrubs" of individual accounts before they go through collections.

(Doc. No. 52-1 at ¶¶ 7-12.)  But while Defendant's attorneys are involved with WWR's collection process at a high level, they do not personally conduct account-level reviews. (Doc. No. 58-2 at ¶ 12; Doc. No. 58, Ex. C at 105:12-24.)

On April 1, 2017, Defendant sent Plaintiff a debt-collection letter.  (Doc. No. 52-1 ¶ 13; Doc. No. 52-4.)  The letter was prepared in the ordinary course of business and was sent on Defendant's firm letterhead, which states "WELTMAN, WEINBERG & REIS Co., LPA" in bold at the top and, in smaller font underneath, "ATTORNEYS AT LAW."  (Doc. No. 52-4.)  The body of the letter provides as follows:

> Dear MEGHAN GIBBONS:
>
> Please be advised that the above referenced account has been placed with us to collect the outstanding balance due and owing on this account to the current creditor referenced above.  As of the date of this letter you owe the amount listed above.  Therefore, it is important that you contact us at 1-800-570-3931 to discuss an appropriate resolution of this matter.  Additionally, you may be able to pay on your account online via our web pay website at www.wwrepay.com.
>
> This communication is from a debt collector attempting to collect this debt for the current creditor and any information obtained will be used for that purpose.  Unless you dispute the validity of this debt, or any portion thereof, within thirty (30) days after receipt of this letter, we will assume that the debt is valid.  If you notify us in writing within the thirty (30) day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of a judgment and a copy of such verification or judgment will be mailed to you.  If you request in writing within the thirty (30) day period, we will provide you with the name and address of the original creditor if different from the current creditor.
>
> Thank you for your attention to this matter.
>
> Sincerely,
> Weltman, Weinberg & Reis Co., L.P.A.

(Id.)  Defendant's letter to Plaintiff was prepared using a template that had been previously reviewed and approved by its compliance audit department in accordance with the department's consumer communications policy. (Doc. No. 52-3 at 35:10-36:5; Doc. No. 58-2 ¶ 20.)

On April 24, 2017, Plaintiff filed this action alleging that Defendant's collection letter made false, deceptive and misleading representations in violation of the

> FDCPA because it implied that the letter was sent by an attorney.  (Doc. No. 1.)
> Plaintiff also filed this action on behalf of a proposed class of consumers who had
> received similar collection letters from Defendant at addresses within the
> geographic region of the Third Circuit Court of Appeals.[4]  (Id.)  On August 30,
> 2018, following several months of fact discovery, both parties filed the Motions for
> Summary Judgment.[5]  (Doc. Nos. 50, 52.)

(Doc. No. 70 at 3-4.)  On October 31, 2018, the Court denied the parties' initial Motions for

Summary Judgment, finding that there were genuine disputes of material fact about whether

Defendant's debt-collection letter contained false and misleading information in violation of

Sections 1692e(3) and 1692e(10), and whether Defendant's attorneys had meaningful involvement

in the collection of the debt of Plaintiff and of other consumers.  (See id.)  Following the denial of

Summary Judgment, Defendants have now raised the claim this Court lacks subject matter

jurisdiction because Plaintiff does not have standing to bring this case.

## III.   STANDARD OF REVIEW

A motion to dismiss for want of standing is brought under Federal Rule of Civil Procedure

12(b)(1) because standing is a jurisdictional matter.  Constitution Party of Pa. v. Aichele, 757 F.3d

347, 357 (3d Cir. 2014) (internal citation omitted).

A district court considering a motion pursuant to Rule 12(b)(1) must first determine

whether that motion presents a "facial" attack or a "factual" attack on the claim at issue "because

that distinction determines how the pleading must be reviewed."  Id.  A facial challenge contests

the sufficiency of the complaint because of a defect on its face, such as lack of diversity among

---

[4]   The Court granted Plaintiff's Motion for Class Certification (Doc. No. 37) in a prior Opinion
and Order dated October 31, 2018.

[5]   In Defendant's Motion, it asserted that attorneys in their firm were meaningfully involved in
the debt-collection process by way of "evaluating the intake of new portfolios, determining
collection strategies, creating 'scrubs' to ensure compliance with various laws, and creating
and reviewing the letter templates used by the firm." (Doc. No. 70 at 13; Doc. No. 52 at 13-
14; Doc. No. 57 at 13-14.)

the parties or the absence of a federal question.  See Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  In a facial challenge, the court must consider the allegations of the complaint as true and consider only those allegations in the complaint and the attached documents in deciding whether the plaintiff has sufficiently alleged a basis for subject-matter jurisdiction.  See Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000); see also U.S. ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007) (terming a facial attack as "an alleged pleading deficiency").  Thus, a court applies the same standard of review used in considering a motion to dismiss under Rule 12(b)(6).

A factual attack, on the other hand, challenges the actual failure of the plaintiff's claims to "comport with the jurisdictional prerequisites."  Pa. Shipbuilding, 473 F.3d at 514.  Such an evaluation may occur at any stage of the proceeding, but only after the defendant has filed an answer.  Mortensen, 549 F.2d at 891-92.  When a court is confronted with a factual attack, "[it] is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," and the plaintiff bears the burden of showing that jurisdiction does in fact exist.  Id.  A district court may consider evidence outside the pleadings.  Gould Elecs. Inc., 220 F.3d at 176 (internal citation omitted).  No presumptive truthfulness attaches to the plaintiff's allegations, such that the existence of disputed material facts does not preclude a court from evaluating the merits of jurisdictional claims.  Mortensen, 549 F.2d at 891.

## IV.  DISCUSSION

### A.  Defendant Makes a Factual Attack

In the instant case, Defendant raises a factual attack to subject matter jurisdiction.  (See Doc. No. 89 at 5) ("Defendant asserts a factual challenge to Plaintiff's Complaint.")  Moreover, a review of the record shows that Defendant is mounting a factual attack because it relies on evidence

outside the pleadings.  For example, Defendant claims that Plaintiff's deposition testimony shows

that she does not have subject matter jurisdiction because her proffered "fear of . . . being sued" is

not an injury sufficient to confer Article III standing.  (Id. at 14-15.)  Thus, Defendant is raising a

factual challenge and the Court is free to "weigh and consider evidence outside the pleadings" to

determine whether Plaintiff has Article III standing to sue and whether the Court has the power to

hear the case.  Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016).

### B.  Article III Standing Generally

Under Article III of the United States Constitution, the judicial power "extends only to

'Cases' and 'Controversies.'"  Spokeo v. Robins, 136 S. Ct. 1540, 1547 (2016) (quoting U.S.

CONST. art. III §2).  "Standing to sue is a doctrine rooted in the traditional understanding of a

case or controversy," and it is "[t]he plaintiff, as the party invoking federal jurisdiction, [who]

bears the burden of establishing" standing.  Id.  Furthermore, the Supreme Court has

> established that the irreducible constitutional minimum of standing contains three
> elements. First, the plaintiff must have suffered an injury in fact – an invasion of a
> legally protected interest which is (a) concrete and particularized, and (b) actual or
> imminent, not conjectural or hypothetical.  Second, there must be a causal
> connection between the injury and the conduct complained of – the injury has to be
> fairly traceable to the challenged action of the defendant, and not the result of the
> independent action of some third party not before the court.  Third, it must be likely,
> as opposed to merely speculative, that the injury will be redressed by a favorable
> decision.

Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992) (internal citations, ellipsis, and quotations

omitted).  For a harm to be "particularized . . . the injury must affect the plaintiff in a personal and

individual way."  Id. at 560 n.1.  For a harm to be "concrete" the "injury must be 'de facto'; that

is, it must actually exist."  Spokeo, 136 S.Ct. at 1548 (citing Black's Law Dictionary 479 (9th ed.

2009)).  Moreover, "intangible injuries can nevertheless be concrete" for purposes of Article III

standing, and plaintiffs in such cases may "need not allege any <u>additional</u> harm beyond the one Congress has identified." <u>Id.</u> (emphasis in original).

To determine "whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." <u>Id.</u> at 1549.  Accordingly, a court should examine whether (1) a particular harm has a "close relationship" to harms that have "traditionally been regarded as providing a basis for a lawsuit in English and American courts," and (2) whether Congress has elevated an intangible harm to a "legally cognizable injur[y]." <u>In re Horizon Healthcare Services Inc.</u>, 846 F.3d 625, 637 (3d Cir. 2017) (quoting <u>Spokeo</u>, 136 S. Ct. at 1549). In the first inquiry, "a close relationship does not require that the newly proscribed conduct would 'give rise to a cause of action under common law.'" <u>Sussino v. Work Out World, Inc.</u>, 862 F.3d 346, 351(3rd Cir. 2017) (quoting <u>In re Horizon</u>, 846 F.3d at 639).  "But it does require that newly established causes of action protect essentially the same interests that traditional causes of action sought to protect." <u>Id.</u>  Under the second inquiry, a court must analyze "whether Congress has expressed an intent to make an injury redressable." <u>In re Horizon</u>, 846 F.3d at 637.  However, the "congressional power to elevate intangible harms into concrete injuries is not without limits" and a "'bare procedural violation divorced from any concrete harm[]' is not enough." <u>Id.</u> (quoting <u>Spokeo</u>, 136 S. Ct. at 1549).

In sum, standing has a three-part test.  Moreover, if the injury alleged is intangible, a two-part test applies when determining if the injury constitutes an injury-in-fact.  With these elements of standing in mind, the Court will apply them to the facts here.

### C.  Plaintiff Has Article III Standing

#### 1.  Plaintiff Has Suffered an Injury-in-Fact

Plaintiff's alleged harm is an injury-in-fact because it is both particularized and concrete, and actual.   Spokeo, 136 U.S. at 1549.   First, Plaintiff's alleged injury is undoubtedly particularized because she received a debt-collection letter from Defendant addressed to her regarding her personal debts.   Thus, the alleged harms stemming from Defendant's debt-collection letter has "affected [P]laintiff in a personal and individual way."  Lujan, 504 U.S. at 560 n.1.  This is enough to satisfy the particularized injury inquiry.

Second, Plaintiff's alleged harm is sufficiently concrete.   Although she alleges an intangible harm, that harm has a "close relationship" to harms that have "traditionally been regarded as providing a basis for a lawsuit in English and American courts" and has been "elevated" by Congress into a "legally cognizable injury."  In re Horizon, 846 F.3d at 637.  In this regard, Section 1692e is closely related to the common-law interest of protecting consumers from fraud[6] or deceit.  See id.  Section 1692e forbids the use of any "false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C §§ 1692e(3). Thus, this statutory section is closely related to the common-law interest of protecting consumers from fraud or deceit.

Courts in the Third Circuit have found that the traditional concept of fraud is implicated in analogous circumstances.   For example, the right to be free from deceptive or misleading communications was recently reaffirmed as a harm traditionally regarded as providing a basis for a lawsuit in Cartmell v. Credit Control, LLC.  No. 19-1626, 2020 U.S. Dist. LEXIS 4136, at *27-

---

[6]   In Black's Law Dictionary, fraud is defined as "[a] knowing misrepresentation or knowing concealment of a material fact made to induce another to act to his or her detriment."  Fraud, Black's Law Dictionary (11th ed. 2019).

28 (E.D. Pa. Jan. 10, 2020). There, the court found that Article III standing existed where the plaintiff alleged a violation of Section 1962 after receiving a collection letter that failed to notify him that repayment of any part of his outstanding debt—which at the time the letter was sent was beyond the statute of limitations and therefore not judicially recoverable—could revive the debt and subject him to liability. Id. at *2. Plaintiff contended this omission violated the FDCPA's prohibition on unfair and deceptive debt-collection practices. Id. Reasoning that the right to truthful or non-misleading information in the debt-collection process is an interest traditionally recognized by law, the court found that "[Plaintiff's] receipt of [Defendant's] collection letter subjected [him] to a de facto concrete injury—the deprivation of his substantive right to truthful information." Id. at 28-29.

Moreover, in Bock v. Pressler & Pressler, Article III standing existed when a plaintiff sued a law firm for allegedly filing against her in state court a complaint without meaningful attorney review, in violation of Section 1692e of the FDCPA. 254 F. Supp. 3d 724, 736 (D.N.J. May 25, 2017). After finding that "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney[,]" was an "interest[] traditionally recognized at law," the court found that the plaintiff had Article III standing to bring suit. See id.

Similarly, in Cunningham v. Credit Bureau of Lancaster Cty, Inc., Article III standing existed under Section 1962e when plaintiffs received letters they claimed were materially deceptive and misleading because the defendant falsely represented that it was a credit bureau in the company's name and logo. No. 17-5102, 2018 U.S. Dist. LEXIS 197460, at *2 (E.D. Pa. Nov. 20, 2018). The plaintiffs argued that the deceptive use of credit bureau in the letter "placed debtors at risk of being intimidated into thinking that [the debt-collector] is a powerful institution, has a wealth of private information, and can control sensitive financial data on debtors." Id. at *16.

10

Relevant here, the court found that the plaintiffs' "claims have a close relationship to a harm traditionally providing a basis for a lawsuit in English or American courts" because "the common law has long reflected an interest in avoiding the harms inherent to receiving misleading information," including the risk of being deceived, misled or intimidated. Id. at *17-18.  Moreover, the court noted that the plaintiffs "need not demonstrate that they could have prevailed under a common law cause of action; rather, the plaintiffs need only show that the FDCPA protects 'essentially the same interests' traditionally protected at common law." Id. at *18 (citing Susinno, 862 F.3d at 351).

Here, the alleged violation of Section 1692e implicates a harm traditionally regarded as providing a basis for a lawsuit in English and American courts.  Plaintiff claims that receiving the debt-collection letter containing Defendant's law firm letterhead and signature block led her to "belie[ve] that an attorney was involved with the details of her account."  (Doc. No. 50-2 at 2.)  If a factfinder determines that the "least sophisticated debtor"[7] would be misled into believing an attorney was involved in Plaintiff's account and intended to take legal action to collect the debt, then Plaintiff would have been deprived of her right to truthful information in the debt-collection process and would have faced the corresponding risk of harm.   Thus, deception or misrepresentation regarding attorney involvement is at its core the deprivation of the right to truthful information.  While the alleged misrepresentation would "not give rise to a cause of action under common law," the cause of action created by the FDCPA "protects essentially the same

---

[7]   The Third Circuit analyzes FDCPA claims under Section 1692e "from the perspective of the least sophisticated debtor" to determine "whether a debt collector's statement in a communication to a debtor would deceive or mislead the least sophisticated debtor."  Jensen v. Pressler & Pressler, 791 F.3d 413, 420-21 (3d Cir. 2015).

interests." Sussino, 862 F.3d at 351.  Therefore, the alleged violation implicates a harm with a traditional basis in law.

In addition, Plaintiff's harm is concrete because it has been elevated by Congress into a legally cognizable injury.  Indeed, "Congress found that there is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." Bock, 254 F. Supp. 3d at 734.  "Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." Id. (citing 15 U.S.C. § 1692(a)).  "With that factual foundation in place, Congress sought, by enacting FDCPA, to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." Id.

Thus, to that end, "Congress elevated certain abusive debt collection practices to the status of viable federal causes of action" by enacting the FDCPA.  Id. at 735.  "Among these Congressionally-recognized abuses is the false representation or implication that any individual is an attorney or that any communication is from an attorney." Id. (citing § 1692e(3)).  As explained in Bock, this includes abuses where there is an allegedly deceptive implication that an attorney was meaningfully involved in a collection complaint because "[s]uch a false representation or implication is, in itself, the very conduct Congress expressly sought to proscribe." Id.

In the instant case, the allegedly deceptive implication that an attorney sent the collection letter to Plaintiff is precisely the kind of harm covered by Congress in the FDCPA.  Although Defendant is a law firm, there is a genuine dispute as to whether an attorney was meaningfully involved in Plaintiff's debt-collection account and the collection letter.  (Doc. No. 70.)  And as

stated previously, while Defendant's attorneys are responsible for collection activities at a high level, whether they personally conduct account-level reviews remains a genuine issue of material fact.  (Doc. No. 58-2 at ¶12; Doc. No. 58, Ex. C at 105:12-24.)  Therefore, it is entirely plausible that the least sophisticated debtor, upon receipt of a letter from Defendant similar to that received by Plaintiff, could be misled into believing that their account was personally reviewed by an attorney and identified for legal action.  See Lesher v. Law Offices of Mitchell N. Kay, PC, 650 F.3d 993, 1003 (3rd Cir. 2011) (holding that the least sophisticated debtor receiving debt-collection letters on a law firm letter head could reasonably infer that their case is a "candidate for legal action.").

Moreover, Defendant's assertion here that Plaintiff's "fear" of being sued is insufficient to confer standing is without merit.  (See generally Doc. No. 94.)  The alleged misrepresentation that an attorney was meaningfully involved in the debt collection or meaningfully reviewed Plaintiff's account is precisely the harm that the section 1692e was intended to prevent.  Accordingly, "no additional harm need be alleged" to satisfy the concreteness requirement of Article III standing. Spokeo, 136 S.Ct. at 1549.  Thus, Plaintiff has alleged a sufficiently concrete harm because the alleged FDCPA violation was specifically elevated by Congress into a "legally cognizable injury." In re Horizon, 846 F.3d at 637.

In addition to particularity and concreteness, the injury-in-fact element of Article III standing requires that the invasion of the legally protected interest be actual or imminent.  The "actual and imminent" standing requirement is satisfied when a plaintiff asserts a claim for statutory damages based upon a violation of section 1692e of the FDCPA.  See Bock, 254 F. Supp. 3d at 736 (explaining that a plaintiff seeking statutory damages based upon an intangible harm resulting from a violation of section 1692e of the FDCPA satisfied the actual injury requirement

for standing.)   Here, Plaintiff has alleged an actual invasion of her legally protected interests because she has shown that she received a debt-collection letter from Defendant that allegedly violated the FDCPA.   Thus, Plaintiff satisfies the "actual or imminent" requirement of the injury-in-fact analysis.

### 2.   Plaintiff's Injury is Traceable to Defendant

The injury that Plaintiff suffered is fairly traceable to the actions of Defendant because her alleged harm, while intangible, results from the actions of Defendant.   The traceability element of Article III standing "requires the alleged injury to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Finkelman v. National Football League, 810 F.3d 187, 194 (3d Cir. 2016) (internal citations and quotations omitted).   "This requirement is 'akin to 'but for' causation' in tort and may be satisfied 'even where the conduct in question might not have been a proximate cause of the harm.'" Id. (quoting Edmonson v. Lincoln Nat. Life Ins. Co., 725 F.3d 406, 418 (3d Cir. 2013)).

After applying the law to the facts here, it is evident that Plaintiff has satisfied the traceability element.   In this regard, Defendant is incorrect in asserting that the alleged harm giving rise to standing is Plaintiff's "fear," which "is only traceable back to herself."   (Doc. No. 89 at 15.) In actuality, Plaintiff's fear stems from the harm that gives rise to standing in this case, which is the alleged violation of the FDCPA resulting from Defendant's conduct.

Moreover, the Court is not persuaded by Defendant's imploration to apply here the analysis and logic from Bucholz v. Meyers Njus Tanick, PA., 946 F.3d 855 (6th Cir. 2020).   In Buchholz, the Sixth Circuit reasoned that the Plaintiff-debtor was responsible for his debt, and for this reason, the anxiety he felt upon receiving two debt-collection letters was self-inflicted.   Id. at 867.   But Defendant's reliance on Buchholz is unpersuasive because the concrete and particularized injury

giving rise to standing in this case is the alleged violation of the FDCPA and not Plaintiff's fear. Defendant sent the debt-collection letter at issue and Plaintiff has satisfied the traceability jurisdictional requirement.

### 3. Plaintiff's Injury is Redressable

In addition to traceability and injury-in-fact, a Plaintiff must show that the complained of injury is redressable.  Because Congress created a "private right of action" and approved statutory damages under section 1692k(a) to enforce violations of the FDCPA, "Congress has 'expressed an intent to make the injury redressable.'" Kamal v. J. Crew Group, Inc., 918 F.3d 102, 113 (3d Cir. 2019) (quoting In re Horizon, 846 F.3d at 639).  Here, the injury is redressable because there is a statutory fine not to exceed $1,000 for individual violations of 15 U.S.C § 1692.  15 U.S.C. § 1692k(a)(2)(a).  Therefore, Plaintiff has satisfied this jurisdictional requirement.

## V.   CONCLUSION

Plaintiff has satisfied the requirements to establish her standing to bring the instant action. Accordingly, Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1) will be denied.  An appropriate Order follows.